UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

|  |  |
|---|---|
| Plaintiff, | COMPLAINT |
| -against- | Civil Action No.<br>2:20-CV- |
| COUNTY OF NASSAU, | (                    J.) |
|  | (                    M.J.) |
| Defendant. |  |

-------------------------------------------------------------X

Plaintiff, United States of America (the "United States"), by its attorney, SETH D.

DuCHARME Acting United States Attorney for the Eastern District of New York, by the

authority of the Attorney General, on behalf of the United States Environmental Protection

Agency ("EPA"), for its complaint against the Defendant County of Nassau ("Nassau") herein

alleges as follows:

## NATURE OF ACTION

1.       This is a civil action brought at the request of the Administrator of the EPA

pursuant to Section 9006 of the Solid Waste Disposal Act, as amended by various laws,

including the Resource Conservation and Recovery Act (hereinafter referred to as the "Act" or

"RCRA"), 42 U.S.C. §§ 6991e *et seq.*, for injunctive relief and civil and stipulated penalties for

the failure of Nassau to comply with federal underground storage tank ("UST") regulations and

with an EPA administrative order that, *inter alia*, required that Nassau achieve compliance with

the RCRA requirements regarding USTs owned or operated by Nassau at 48 of its facilities.

2.       This action seeks an order requiring that Nassau comply with federal UST

regulations and EPA's administrative order, which was issued in the form of a consent

agreement and final order ("CA/FO") on September 29, 2012.

3. This action also seeks civil penalties pursuant to Section 9006 of RCRA, 42 U.S.C. § 6991e, and stipulated penalties under the CA/FO for Nassau's repeated failures to comply with the UST regulations and the requirements of the CA/FO.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to Section 9006(a)(1) of RCRA, 42 U.S.C. § 6991e(a)(1), and 28 U.S.C. §§ 1331, 1345 and 1355.

5. Venue is proper in the Eastern District of New York pursuant to Section 9006(a) of RCRA, 42 U.S.C. § 6991e(a), and 28 U.S.C. § 1391(b) and (c) because the violations occurred in this district.

## THE PARTIES

6. Plaintiff is the United States of America on behalf of EPA.

7. Nassau is a county organized pursuant to the laws of the State of New York.

8. Nassau currently owns or operates USTs at 48 facilities.

9. The USTs owned or operated by Nassau are at facilities located throughout the County of Nassau, New York, except for one facility that is located in the town of Riverhead in the adjacent County of Suffolk, New York.

10. The USTs owned by Nassau are operated by the Nassau County Department of Public Works.

11. All of the facilities at which Nassau has owned or operated USTs are located within the boundaries of a federally designated Sole Source Aquifer, which, among other criteria, is an aquifer that supplies at least fifty percent (50%) of the drinking water consumed in the area within the Sole Source Aquifer boundaries. The Sole Source Aquifer designation is a tool to identify and help protect drinking water supplies in areas with few or no alternative sources to

the groundwater resource and where, if contamination occurred, using an alternative source would be extremely expensive.

<u>STATUTORY AND REGULATORY BACKGROUND</u>

12.     Section 9001(10) of the Act, 42 U.S.C. § 6991(10) defines "underground storage tank" as any one or combination of tanks (including underground pipes connected thereto) that is used to contain an accumulation of regulated substances, and the volume of which (including the volume of underground pipes connected thereto) is 10 percent or more beneath the surface of the ground. *See* 40 C.F.R. §280.12.

13.     Section 9001(7) of the Act, 42 U.S.C. § 6991(7), defines "regulated substance," as any hazardous substance defined in Section 101(14) of CERCLA, 42 U.S.C. § 9601(14) and petroleum. See 40 C.F.R. §280.12.

14.     The Act requires the EPA Administrator to promulgate regulations for release detection and prevention applicable to all owners and operators of USTs, as may be necessary to protect human health and the environment.  This includes, but is not limited to:
"(1) requirements for maintaining a leak detection system, an inventory control system together with tank testing, or a comparable system or method designed to identify releases in a manner consistent with the protection of human health and the environment; (2) requirements for maintaining records of any monitoring or leak detection system . . . (5) requirements for the closure of tanks to prevent future releases of regulated substances into the environment and (6) performance standards for new underground storage tanks ." *See* Sections 9003(a), (c) and (e) of RCRA, 42 U.S.C. § 6991b(a), (c) & (e).

15.     The UST regulations promulgated by the EPA Administrator pursuant to Subtitle I of RCRA are codified at 40 C.F.R. Part 280, and most of these requirements became

effective in December 1988.  See 40 C.F.R. Parts 280 and 281.  New York State has not received

state program approval under section 9004 of RCRA, 42 U.S.C. § 6991c.  Thus, the federal UST

regulations have been in effect in New York State since December 1988.

16.     Pursuant to 40 C.F.R. § 280.10(a), "[t]he requirements of this part apply to all

owners and operators of an UST system."

17.     Pursuant to 40 C.F.R. Part 280, Subpart B, Sections 280.20-280.22, owners and

operators of UST systems must use equipment to prevent spill and overfilling associated with

product transfer to the UST systems. *See* 40 C.F.R. Sections 280.20(c), 280.21(d).

18.     The UST spill and overfill regulations require, *inter alia*, that owners and

operators ensure that releases due to spilling and overfilling do not occur, and that transfer of

product to USTs is monitored constantly to prevent overfilling and spilling.  See 40 C.F.R.

§ 280.30.

19.     The regulations further require that all existing UST systems had to comply with

either: (1) the performance standards for new USTs described in 40 C.F.R. § 280.20; (2) upgrade

requirements described in 40 C.F.R. §§ 280.21(b)-(d); or (3) closure requirements described in

40 C.F.R. Part 280, subparts F and G.

20.     An owner or operator of an existing UST was required to provide release

detection.  See 40 C.F.R. Part 280, Subpart D, Sections 280.40-280.45.

21.     An owner or operator must conduct line tightness testing or use a monthly

monitoring method for suction piping or pressurized piping connected to tanks pursuant to

40 C.F.R. Sections 280.41(b)(1)(i) & (ii), 280.44(a) - 280.44(b).

22.     The regulations require, *inter alia*, that when a UST is temporarily closed for

three months or more, owners and operators must also leave vent lines open and functioning, and

cap and secure all other lines, pumps, manways and ancillary equipment.  The regulations further require, *inter alia*, that when a UST is temporarily closed for more than 12 months, owners and operators must permanently close the UST.  Permanent closure includes notifying the implementing agency of intent to permanently close a UST, emptying the tank and cleaning it, removing the tank from the ground or filling it with an inert solid material, and assessing the UST site for the presence of any releases.  *See* 40 C.F.R. §§ 280.70-280.74.

23.     An owner or operator of a hazardous substance UST must provide release detection that provides adequate secondary containment pursuant to 40 C.F.R. Section 280.42(b)(1) or provide temporary closure, followed by permanent closure pursuant to 40 C.F.R. Sections 280.70-74.

24.     Under RCRA section 9005(a), 42 U.S.C. §6991d(a), and 40 C.F.R.§2380.34, UST owners and operators must, upon request, furnish EPA with information pertaining to their USTs.

25.     UST owners and operators must cooperate fully with any inspections, monitoring and testing by EPA, and with any requests, inter alia, for document submission issued by EPA under the authority of RCRA Section 9005(a), 42 U.S.C. §6991d(a), and 40 C.F.R. §280.34.

26.     Section 9006(a)(1) of RCRA, 42 U.S.C. § 6991e(a)(1), authorizes the EPA Administrator to commence a civil action for appropriate relief, including a temporary or permanent injunction, when a person is in violation of any requirement of subtitle I of RCRA.

27.     Section 9006(a)(1) authorizes EPA to issue an administrative order requiring compliance to any person who is in violation of any UST requirement.   Under Section 9006(a)(3) of RCRA, 42 U.S.C. § 6991e(a)(3), violators who fail to comply with an administrative order issued under Section 9006(a)(1) shall be liable for a civil penalty up to

$25,000 for each day of continued noncompliance.  Pursuant to 40 C.F.R. Part 19, violations that occurred on or after January 12, 2009 were subject to an adjusted statutory maximum of $37,500 per day for each day of continued non-compliance, and violations that occurred after November 2, 2015 and for which penalties are assessed on or after February 6, 2019 are subject to an adjusted statutory maximum of $60,039 per day of violation (i.e., for each day of continued non-compliance). *See* 84 Fed. Reg. 2056, 2059 (February 6, 2019) and 84 Fed. Reg. 5955 (Feb. 25, 2019).

28.     Pursuant to Section 9006(d)(2) of RCRA, 42 U.S.C. § 6991e(d)(2), violators who fail to comply with any UST requirement shall be liable for a civil penalty up to $10,000 for each tank for each day of violation. Pursuant to 40 C.F.R. Part 19, violations that occurred on or after January 12, 2009 were subject to an adjusted statutory maximum of $16,000 per day for each day of continued non-compliance and violations that occurred after November 2, 2015 and for which penalties are assessed on or after February 6, 2019 are subject to an adjusted statutory maximum of $24,017 per day of violation (ie., for each day of continued non-compliance). *See* Fed. Reg. 84 Fed. Reg. 2056, 2059 (February 6, 2019) and 84 Fed. Reg. 5955 (Feb. 25, 2019).

### PRIOR EPA ADMINISTRATIVE COMPLAINT AND SETTLEMENT

29.     The EPA issued a 74-Count Administrative Complaint, Compliance Order, and Notice of Opportunity for Hearing ("Administrative Complaint") to Nassau on March 31, 2011. The Administrative Complaint identified 33 facilities with USTs owned or operated by Nassau as having violations of the RCRA requirements governing underground storage tanks.

30.     The Administrative Complaint alleged, *inter alia*, that during 2008, 2009, and 2010, pursuant to Section 9005 of the Act, 42 U.S.C. Section 6991d, authorized representatives

of EPA inspected 33 facilities with USTs owned or operated by Nassau, and found numerous violations of Subtitle I of the Act and 40 C.F.R. Part 280.

31.     As alleged in the Administrative Complaint, Nassau had committed the following types of violations of the UST requirements in 40 C.F.R. Part 280:

a.      Failure to Comply Timely and Adequately with Requirements in EPA Information Request Letters (Section 9005 and 40 C.F.R. §280.34);

b.      Failure to Perform Release Detection and to Maintain Release Detection Records for Tanks (Sections 280.41(a), 280.34(b)(4), 280.34(c), and 280.45);

c.      Failure to Perform Release Detection and to Maintain Release Detection Records for Suction Piping (Section 280.41(b)(1)(ii), 280.34(b)(7), 280.34(c), and 280.45);

d.      Failure to Use Overfill Prevention Equipment for UST Systems (Sections 280.20(c)(1)(ii) and 280.21(d));

e.      Failure to Cap and Secure a Temporarily Closed UST System (280.70(b));

f.      Failure to Upgrade an Existing UST system or Meet New Performance Standards, or Close an Existing UST system (280.21);

g.      Failure to Provide Adequate Secondary Containment for a Hazardous Substance UST System (280.42(b)(1)); and

h.      Failure to Permanently Close a Temporarily Closed UST System After 12 months (280.70(c)).

32.     The Administrative Complaint alleged that Nassau had violated federal UST rules, as identified in the paragraph above, at one or more of 33 facilities that had USTs that were owned or operated by Nassau.

33.     EPA and Nassau reached a settlement of the claims in the Administrative Complaint which was memorialized in a September 2012 administrative Consent Agreement and Final Order ("CA/FO") issued pursuant to Section 9006 of the Act and 40 C.F.R. subsections 22.18(b)(2) & (3) of the Consolidated Rules of Practice Governing the Administrative Assessment of Civil Penalties, 40 C.F.R. Part 22.

34.     The CA/FO required Nassau to pay a civil penalty of $400,000, which Nassau paid.

35.     The CA/FO's requirements applied to facilities cited in the Administrative Complaint, and also facilities not cited in the Administrative Complaint.

36.     Among other requirements, the CA/FO required Nassau to perform the following obligations by the dates below, which account for any extensions granted by EPA:

   a.     Overfill Prevention: Install overfill alarms with automatic shutoff devices at Nassau's Facilities, including 19 facilities identified in the Administrative Complaint by June 30, 2013 (see 40 C.F.R. § 280.20(c)(1));

   b.     Release detection: Conduct line tightness testing for piping at facilities where release detection violations were cited in the Administrative Complaint by June 30, 2013 (see 40 C.F.R. §§ 280.41(b)(1)(i)-(ii));

   c.     Release detection systems: install, by either June 30, 2013 or December 31, 2013 (for Nassau's two bus depots), a fully automated Veeder Root TLS-450 release detection system, or equivalent UST systems at all Nassau Facilities (see 40 C.F.R. §§ 280.41(a), 280.43(d)-(f)).  Operation of the automated release detection systems was to commence no later than December 31, 2014, and to continue for a minimum of three years.

   d.     Upgrade or replace an active steel UST at the NCPD 1st Precinct, or provide temporary and permanent closure of the UST, by June 30, 2013 (see 40 C.F.R. § 280.21);

   e.     Provide secondary containment for hazardous substances USTs at the NICE Rockville Centre Bus Depot facility and the NICE Garden City Bus Depot facility, or provide for temporary closure followed by permanent closure, by December 31, 2013 (see 40 C.F.R. §§ 280.70-74);

   f.     Permanently close a 1,000 gallon waste oil tank at the Nice Rockville Centre Bus Depot facility by December 31, 2013 (see 40 C.F.R. § 280.70(c)).

37.     The CA/FO provides for daily stipulated penalties for noncompliance with specified provisions of the CA/FO.

38.     Nassau failed to complete each of the injunctive work requirements specified above in paragraph 36 by the CA/FO deadlines.

39.     Nassau did not timely submit Progress Reports as required by the CA/FO.

40.     The CA/FO required Nassau to complete the installation, by December 31, 2014, of a CMS for monitoring potential releases from any of its USTs and then to operate and maintain the CMS for a period of at least three years. Nassau has not completed the required installation of CMS equipment and has not commenced operation of the CMS at all required locations.

41.     Between June 2014 and May 2015, Nassau's then-contractor LIRO inspected 52 facilities containing USTs that were owned or operated by Nassau. The inspection reports covered 19 additional facilities beyond the 33 facilities cited in the Administrative Complaint. LIRO reported that many of the facilities were violating the requirements of the UST regulations for release detection and record-keeping for both tanks and piping.

42.     EPA notified Nassau in 2013, 2014 and 2015 that it was in substantial non-compliance with the CA/FO.

## GENERAL ALLEGATIONS

43.     Plaintiff repeats and realleges paragraphs 1 through 42 above as if fully set herein.

44.     At all times pertinent to this civil action, Nassau has been and remains the owner or operator of USTs, of at least 48 facilities as those terms are defined in Sections 9001(3) and (4) of RCRA, 42 U.S.C. §6991(3) & (4) and 40 C.F.R. §280.12.

45.     Nassau is a "person" as that term is defined in Section 9001(5) of the Act, 42 U.S.C. § 6991(5), and in 40 C.F.R. §280.12.

46.     For each violation of the CA/FO, Nassau is subject to injunctive relief and liable for civil penalties for each day of noncompliance of up to $37,500 per day through November 2, 2015, and up to $60,039 per day after November 2, 2015 (and for which penalties are assessed on or after February 6, 2019), pursuant to RCRA Section 9006(a)(3) and 40 C.F.R. Section 19.4, and for stipulated penalties as specified in the CA/FO. In addition, for each violation of the UST requirements, Nassau is subject to injunctive relief and liable for civil penalties for each day of noncompliance of up to $16,000 per day through November 2, 2015 and up to $24,017 per day after November 2, 2015 (and for which penalties are assessed on or after February 6, 2019, pursuant to RCRA Section 9006(d)(2) and 40 C.F.R. Section 19.4.

## NASSAU'S VIOLATIONS OF
## THE RCRA UST REGULATIONS AND THE CA/FO

## FIRST CLAIM

## NASSAU FAILED TO PROVIDE RELEASE DETECTION
## MONITORING FOR USTs AT NASSAU'S FACILITIES AS
## REQUIRED BY 40 C.F.R. SECTION 280.41(a) AND THE CA/FO

47.     Plaintiff repeats and realleges paragraphs 1 through 46 above as if fully set herein.

48.     Pursuant to 40 C.F.R. Section 280.40, owners and operators of all UST systems had to comply with federal UST release detection requirements by no later than December 22, 1993.

49.     Owners and operators of UST systems must provide release detection monitoring for tanks pursuant to 40 C.F.R. Section 280.41(a).

50.     Nassau was required to provide release detection for all of its UST systems at all of Nassau's facilities pursuant to 40 C.F.R. Section 280.41(a).

51.     Under the CA/FO, Nassau was required to install a method of release detection, specifically automated electronic release detection, such as Veeder-Root TLS-450, or equivalent

by June 30, 2013 for all USTs at all facilities where release detection was required under 40 C.F.R. Part 280, except that there was a later deadline of December 31, 2013 for the work at the Rockville Centre Bus Depot Facility and the Garden City Bus Depot Facility. The automated method of release detection is referred to as "automatic tank gauging" under 40 C.F.R. Section 280.43(d) and is one of several legally permissible methods of release detection for tanks listed in 40 C.F.R. Section 280.43.

52. Nassau's operation of the automated release detection system was required under the CA/FO to continue for a minimum of three years beginning as early as March 31, 2013 but by no later than December 31, 2014.

53. Nassau installed a fully automated Veeder-Root TLS-450 release detection system at USTs at the following 15 Nassau facilities on the date(s) indicated below:

    a.      Bay Park Water Pollution Control Plant, 2 Marjorie Lane, East Rockaway, NY (November 3, 2017);

    b.      Cedar Creek Water Pollution Control Plant, 3340 Merrick Road, Wantagh, NY (February 18, 2014);

    c.      Atlantic Beach Bridge, Doughty Boulevard, Lawrence, NY (July 28, 2014);

    d.      Nassau County Correctional Facility, 100 Carman Avenue, East Meadow, NY (February 9, 2014, February 21, 2014, March 5, 2014, April 25, 2014, and August 11, 2015);

    e.      District Main Court, 99 Main Street, Hempstead, NY (August 20, 2014);

    f.      Emergency Ops Center, 101 15th Street, Mineola, NY (July 11, 2013)

    g.      Eisenhower Park, East Meadow, NY (May 30, 2013 and August 1, 2013);

    h.      Family Court Complex, 1200 Old Country Road, Mineola, NY (April 2, 2014)

    i.      Firemens Training Center, 300 Winding Road, Old Bethpage, NY (July 8, 2013 and September 13, 2013);

    j.      Hempstead Garage, 467 Baldwin Road, Hempstead, NY (May 1, 2016);

k.  Hicksville Garage, 170 Cantiague Rock Road, Hicksville, NY (January 15, 2016);

l.  Nassau County Police Department Marine Bureau, 12 Sampson Avenue, Uniondale, NY (March 16, 2017);

m.  Nassau County Police Department Headquarters, 1490 Franklin Avenue, Mineola, NY (October 4, 2013).

n.  Nassau County Community College, 1 Education Drive, Garden City, NY (January 2, 2015)

o.  Nassau County Public Safety Center,1194 Prospect Avenue, Westbury, NY (April 30, 2014)

54.  Nassau's failure, between at least September 27, 2012 and various dates between May 30, 2013 and November 3, 2017 to provide for monitoring of releases for the 15 UST locations cited in paragraph 53 above violates 40 C.F.R. Section 280.41(a).

55.  Nassau's failure to provide monitoring for releases, specifically the failure to install automated release detection for the USTs at the 15 facilities identified in paragraph 53 above by the June 30, 2013 deadline, violates paragraph 4(a) of the CA/FO.

**Two Nassau Bus Depot Facilities Containing USTs**

56.  Nassau was required to provide monitoring for releases for the USTs at  the Nassau Inter-County Express (NICE) Rockville Centre Bus Depot Facility, 50 Banks Avenue, Rockville Centre, N.Y. and the NICE Garden City Bus Depot Facility, 700 Commercial Avenue, Garden City, N.Y. pursuant to 40 C.F.R. Section 280.41(a).  Pursuant to paragraph 4(a) of the CA/FO, Nassau was required to install a fully automated Veeder-Root TLS-450 release detection system, or equivalent by December 31, 2013 for the USTs at these two locations.

57.  Nassau violated the CA/FO by failing to install a fully automated Veeder Root TLS-450 release detection system, or equivalent, for the USTs at the NICE Rockville Centre Bus

Depot facility and the NICE Garden City Bus Depot facility, by the December 31, 2013 deadline specified in paragraph 4(a) of the CA/FO.

58.     Nassau failed to install a fully automated Veeder-Root TLS-450 release detection system, or equivalent, for USTs at the NICE Garden City Bus Depot facility and the NICE Rockville Centre Bus Depot facility from at least September 27, 2012 to November 15, 2017.

59.     Nassau's failure, between at least September 27, 2012 and at least November 15, 2017 to provide monitoring of releases for the USTs at the NICE Rockville Centre and the NICE Garden City Bus Depot facilities as alleged in paragraphs 58 and59 above violates 40 C.F.R. Section 280.41(a).

**Thirteen Nassau Facilities and Pump Stations With Emergency Generator USTS**

60.     Pursuant to paragraph 4 of the CA/FO, Nassau was required to install, by December 31, 2013, automated release detection (and operate the automated release detection for a minimum of three years beginning no later than December 31, 2014) for USTs that were "deferred" (i.e., exempt) from federal release detection under 40 C.F.R. Part 280.10(d) and 40 C.F.R. Part 280. These USTs store fuel solely for use to power emergency generators.

61.     Effective October 13, 2018, UST systems that were previously exempt from federal release detection monitoring requirements, such as USTs that stored fuel solely for use by emergency power generators, became subject to federal release detection requirements in subpart D of 40 C.F.R. Part 280.

62.     From September 27, 2012 to the present, Nassau has owned or operated USTs that have stored fuel solely for use by emergency power generators at the Nassau County Public

Safety Facility and the Nassau County Family Court Facility (the "Emergency Generator USTs").

63. In addition, from September 27, 2012 to the present, Nassau has owned or operated USTs that have stored fuel solely for use by emergency power generators at 11 Pump Stations (the "Pump Stations" or the "Emergency Generator Facilities") as identified below:

   a.   Shore Crest Pump Station, Woodland Rd. at Northfield Rd, Glen Cove, NY

   b.   Longmeadow Pump Station, Deep Woods Ct. at Longmeadow Lane, Glen Cove, NY

   c.   Glengariff Dr. Pump Station, End of Glengarrif Dr., Glen Cove, NY

   d.   Royal Ave. Pump Station, Royal Ave. at Murdock Ave., Oceanside, NY

   e.   Fox Road Pump Station , Fox Rd. at Garden Place, Baldwin, NY

   f.   Grand Avenue Pump Station, Grand Avenue at Washington Street, Baldwin, NY

   g.   Lido Blvd Pump Station, Regent Dr. at Reynolds Dr., Lido Beach, NY

   h.   Long Beach Pump Station, Long Beach Rd. at Daly Blvd, Oceanside, NY

   i.   Cold Spring Pump Station, Cold Spring Rd. at Calvert Dr., Syosset, NY

   j.   Roslyn Village Pump Station, Skillman St. at Bryant Avenue, Roslyn, NY

   k.   Millar Street Pump Station, Freeman Ave. at Knight St., Oceanside, NY

64. The CA/FO required Nassau to provide release detection for the USTs at the Emergency Generator Facilities by the deadline specified in paragraph 4(a) of the CA/FO.

65. Under paragraph 4(a) of the CA/FO, Nassau was required to install a method of release detection, specifically automated release detection, such as a Veeder-Root TLS-450, or equivalent system by December 31, 2013, for the USTs at the Emergency Generator Facilities. This automated method of release detection is referred to as "automatic tank gauging" under 40

C.F.R. Section 280.43(d) and is one of several legally permissible methods of release detection for tanks as listed in 40 C.F.R. Section 280.43.

66.     Nassau failed to install a fully automated Veeder-Root TLS-450 release detection system, or equivalent, for the USTs at the Emergency Generator Facilities identified below:

> a.     Fox Road Pump Station
>
> b.     Grand Avenue Pump Station
>
> c.     Lido Blvd Pump Station
>
> d.     Long Beach Pump Station
>
> e.     Royal Ave. Pump Station
>
> f.     Cold Spring Pump Station
>
> g.     Roslyn Village Pump Station
>
> h.     Millar Street Pump Station

67.     Nassau also failed to install automated Veeder-Root TLS-450 release detection system or equivalent at another three of the Emergency Generator Facilities (Shore Crest Pump Station; Glengariff Dr. Pump Station; and Longmeadow Pump Station) by the December 31, 2013 deadline set forth in paragraph 4(a) of the CA/FO.

68.     From at least October 13, 2018 to the date of filing of this Complaint, Nassau has failed to install a fully automated Veeder-Root TLS-450 release detection system, or the equivalent, for USTs at the 11 Emergency Generator Facilities identified in paragraph 63 above, in violation of the requirement of 40 C.F.R. Section 280.41(a).

69.     Nassau's failure, between at least October 13, 2018 and the date of filing of this Complaint, to conduct monitoring of releases for the 11 Emergency Generator Facilities identified in paragraph 63 above violates 40 C.F.R. Section 280.41(a).

70.     Nassau's failure to install a fully automated Veeder Root TLS-450 release detection system, or equivalent, for the USTs at the Emergency Generator Facilities identified in paragraph 63 above by the December 31, 2013 deadline specified in paragraph 4(a) of the CA/FO, violates the CA/FO.

## SECOND CLAIM

### NASSAU FAILED TO USE OVERFILL PREVENTION EQUIPMENT ON USTS AT 12 LOCATIONS PURSUANT TO 40 C.F.R. SECTION 280.20(c)(1)(ii) AND THE CA/FO

71.     Plaintiff repeats and realleges paragraphs 1 through 70 above as if fully set herein.

72.     Pursuant to 40 C.F.R. Section 280.20(c)(1)(ii), to prevent overfilling associated with product transfer to the UST system, owners and operators must, among other things, use overfill prevention equipment that will (A) automatically shut off flow into the tank when the tank is no more than 95% full; . . ." Also, pursuant to 40 C.F.R. Section 280.21(d), all existing USTs must comply with UST spill and overfill requirements specified in 40 C.F.R. Section 280.20(c).

73.     Pursuant to paragraph 4(b) of the CA/FO, Nassau was required to install by no later than June 30, 2013 overfill alarms with automatic shutoff devices on the UST Systems at the 19 facilities where overfill prevention violations had been cited in 19 different counts in the Administrative Complaint.

74.     Nassau installed overfill alarms with automatic shutoff devices on UST systems at the following 12 facilities on the dates indicated below:

> a.     Bay Park Water Pollution Control Plant (November 3, 2017);
>
> b.     Cedar Creek Water Pollution Control Plant (February 18, 2014)
>
> c.     Nassau County Correctional Facility (February 9, 2014, February 21, 2014, March 5, 2014, April 25, 2014, and August 11, 2015)

      d.      Eisenhower Park (August 1, 2013)

      e.      Firemen's Training Center (July 8, 2013 and September 13, 2013)

      f.      Nassau County Marine Bureau (March 16, 2017)

      g.      Nassau County Police Department Headquarters (October 4, 2013)

      h.      Nickerson Beach, 800 Lido Blvd, Lido Beach, NY (December 19, 2012 and June 26, 2013)

      i.      Nassau County Police Department 3rd Precinct, 214 Hillside Avenue, Williston Park, NY (May 22, 2013)

      j.      Nassau County Police Department 4th Precinct, 1699 Broadway, Hewlett, NY (April 15, 2013)

      k.      Nassau County Police Department Emergency Services, 1255 Newbridge Rd., Bellmore, NY (January 17, 2013)

      l.      Nassau County Police Department Highway Patrol, 870 Brush Hollow Road, New Cassel, NY (April 1, 2013).

75.    Nassau's failure, between at least September 27, 2012 and various dates between December 19, 2012 and November 3, 2017 to install overfill alarms with automatic shutoff devices on UST Systems at the 12 facilities identified in paragraph 75 above violates 40 C.F.R. Section 280.20(c)(1)(ii).

76.    Nassau also violated the CA/FO by installing overfill alarms with automatic shutoff devices on the UST systems at the Facilities lettered (a) through (g) in paragraph 74 above after the June 30, 2013 deadline specified in paragraph 4(b) of the CA/FO.

### THIRD CLAIM

**NASSAU FAILED TO CONDUCT LINE TIGHTNESS TESTING ON SUCTION PIPING AT 12 UST LOCATIONS PURSUANT TO 40 C.F.R. SECTION 280.41(b)(1)(ii) AND THE CA/FO**

77.    Plaintiff repeats and realleges paragraphs 1 through 76 above as if fully set herein

78.    Under 40 C.F.R. Section 280.41(b)(2) (now codified at 40 C.F.R. Section 280.41(b)(1)(ii)), underground suction piping must either have a line tightness test conducted at

least every three years in accordance with Section 280.44(b), or use a monthly monitoring method conducted in accordance with 280.44(c).

79. Under paragraph 4(c) of the CA/FO, Nassau was required, by June 30, 2013, to conduct line tightness testing at the following 21 facilities:

    a.    Bay Park Water Pollution Control Plant, 2 Marjorie Lane, East Rockaway, NY

    b.    Cedar Creek Water Pollution Control Plant 3340 Merrick Road, Wantagh, NY

    c.    Nassau County Correctional Facility

    d.    Eisenhower Park,1899 Hempstead Turnpike, East Meadow, NY

    e.    Firemens Training Center 300 Winding Road, Old Bethpage, NY

    f.    Glen Cove Garage, 12 Morris Avenue, Glen Cove,NY

    g.    Hempstead Garage, 467 Baldwin Road, Hempstead, NY

    h.    Hicksville Garage. 170 Cantiague Rock Rd, Hicksville, NY

    i.    Inwood Garage. 599 Bayview Avenue, Inwood, NY

    j.    Manhasset Garage, 320 Bayview Avenue, Manhasset, NY

    k.    Mitchell Field Complex, 2 Charles Lindburg Blvd, Garden City, NY

    l.    Nassau County Fire Marshall, 899 Jerusalem Avenue, Uniondale, NY

    m.    NCPD Marine Bureau, 16 Sampson St., East Rockaway, NY

    n.    NCPD 1st Precinct, 900 Merrick Road, Baldwin, NY

    o.    NCPD 2d Precinct, 7700 Jericho Turnpike, Woodbury, NY

    p.    NCPD 3d Precinct, 214 Hillside Avenue, Williston, NY

    q.    NCPD 4th Precinct, 1699 Broadway, Hewlett, NY

    r.    NCPD 5th Precinct, 1655 Dutch Broadway, Elmont, NY

    s.    NCPD 7th Precinct, 3636 Merrick Road, Seaford, NY

    t.    NCPD Emergency Services Bureau, 1255 Newbridge Road, Bellmore, NY

u.      Nassau County Wantagh Park, 1 King Road, Wantagh, NY

80.      Nassau did not provide monthly monitoring for suction piping USTs at any of the 21 facilities identified in paragraph 79 above.

81.      Nassau conducted line tightness testing for the suction piping USTs at the following twelve Nassau facilities as follows (dates of this testing indicated in parenthetical).

a.      Nassau County Correctional Facility (January 29, 2014)

b.      Eisenhower Park (January 29, 2014; December 17, 2013)

c.      Fire Training Academy (February 29, 2014; January 31, 2014)

d.      NCPD 3rd Precinct (January 23, 2014)

e.      NCPD 4th Precinct (January 27, 2014)

f.      Glen Cove Garage (January 21, 2014)

g.      Hempstead Garage (January 24, 2014)

h.      Hicksville Garage (January 30, 2014)

i.      Manhasset Garage (January 23, 2014)

j.      NCPD 5th Precinct (October 24, 2013; January 27, 2014)

k.      NCPD Marine Bureau Facility (January 27, 2014; February 7, 2014)

l.      Nassau County Emergency Operations Center (January 16, 2014).

82.      Nassau did not comply with the three year required intervals for performance of line tightness testing for the suction piping USTs at the 12 Nassau facilities identified in paragraphs 81 above during the time periods between at least September 27, 2012 and various dates between December 17, 2013 and February 7, 2014, in violation of 40 C.F.R. § 280.41(b)(1)(ii)).

83. Nassau's failure to timely conduct line tightness testing or use a monthly method of release detection for the suction piping for the UST systems, as specified above in paragraphs 80 through 82 violates 40 C.F.R. § 280.41(b)(1)(ii) and paragraph 4(c) of the CA/FO.

### FOURTH CLAIM

### NASSAU FAILED TO UPGRADE OR CLOSE THE UST SYSTEM AT THE NCPD 1st PRECINCT, OR TO MEET NEW UST SYSTEM PERFORMANCE STANDARDS, IN VIOLATION OF 40 C.F.R. PART 280 AND THE CA/FO

84. Plaintiff repeats and realleges paragraphs 1 through 83 above as if fully set herein.

85. Pursuant to 40 C.F.R. Section 280.21, not later than December 22, 1998, all existing UST system had to comply with the upgrading requirements in paragraphs (b) through (d) of that section, or with the new performance standard requirements set forth in 40 C.F.R. Section 280.20 or the closure requirements set forth in 40 C.F.R. Sections 280.70 to 280.74.

86. Nassau installed a steel UST at the NCPD 1st Precinct prior to December 22, 1988 and it is therefore an existing UST systems pursuant to 40 C.F.R. Section 280.12.

87. The steel UST at the NCPD 1st Precinct did not meet the upgrading requirements of 40 C.F.R. Section 280.21.

88. The steel UST at the NCPD 1st Precinct did not meet the new performance standard requirements of 40 C.F.R. Section 280.20.

89. Pursuant to paragraph 4(d) of the CA/FO, Nassau was required to upgrade or replace, by June 30, 2013, the steel UST at its NCPD 1st Precinct facility or provide temporary and permanent closure for said UST.

90. Nassau replaced the steel UST at the NCPD 1st Precinct on January 27, 2014.

91. Nassau's failure to upgrade or replace the steel UST at the NCPD 1st Precinct, or provide temporary closure followed by permanent closure at said UST, from at least September

27, 2012 to January 27, 2014 violates 40 C.F.R. Sections 280.21 and 40 C.F.R. Section

280.70(c).

92.     Nassau's failure to upgrade or replace the steel UST at the NCPD 1st Precinct, or

provide temporary closure followed by permanent closure, of said UST, by the June 30, 2013

deadline specified in paragraph 4(d) of the CA/FO, violates the CA/FO.

## FIFTH CLAIM

### NASSAU FAILED TO PROVIDE ADEQUATE
### SECONDARY CONTAINMENT FOR UST SYSTEMS AT THE NICE
### BUS DEPOT FACILITIES IN ROCKVILLE CENTRE AND GARDEN
### CITY IN VIOLATION OF 40 C.F.R. SECTION 280.42 AND THE CA/FO

93.     Plaintiff repeats and realleges paragraphs 1 through 92 above as if fully set herein.

94.     Nassau owned or operated a 5,000 gallon hazardous substance UST system, as

defined in 40 C.F.R. Section 280.12, containing ethylene glycol used as antifreeze, at the NICE

Rockville Centre Bus Depot Facility, 50 Banks Avenue, Rockville Centre, NY.

95.     Nassau owned or operated a 20,000 gallon hazardous substance UST system

containing ethylene glycol used as antifreeze, at the NICE Garden City Bus Depot Facility, 700

Commercial Avenue, Garden City, N.Y.

96.     Pursuant to 40 C.F.R Section 280.42(a), by December 22, 1998, all existing

hazardous substance UST systems were required to meet the release detection requirements for

new UST systems in paragraph (b) of this section.

97.     Pursuant to 40 C.F.R. Section 280.42(b) (now codified at 40 C.F.R. Section

280.42(a)(1)-(3)), owners and operators of hazardous substance UST systems must have

secondary containment.

98.     Pursuant to paragraph 4(d) of the CA/FO, Nassau was required to provide

secondary containment, by December 31, 2013, for the hazardous substance USTs at the NICE

Rockville Centre Bus Depot and the NICE Garden City Bus Depot or provide temporary and permanent closure (pursuant to 40 C.F.R. Section 280.70-74) of the hazardous substance USTs at these two facilities.

99.     As of November 15, 2017, Nassau has not installed secondary containment for the hazardous substance USTs at either the NICE Rockville Centre Bus Depot or the NICE Garden City Bus Depot Facilities.

100.     Nassau failed to provide secondary containment of the hazardous substance UST at the NICE Rockville Centre Bus Depot and the NICE Garden City Bus Depot by the December 31, 2013 deadline specified in paragraph 4(d) of the CA/FO.

101.     Nassau failed to provide temporary closure, followed by permanent closure for hazardous substance USTs at the NICE Rockville Centre Bus Depot and at the NICE Garden City Bus Depot by the December 31, 2013 deadline specified in paragraph 4(d) of the CA/FO.

102.     Nassau violated the CA/FO by failing to provide secondary containment for the hazardous substance USTs, or temporary closure followed by permanent closure, at the NICE Rockville Centre Bus Depot facility and the NICE Garden City Bus Depot facility, by the December 31, 2013 deadline specified in paragraph 4(d) of the CA/FO.

103.     Nassau's failure to provide secondary containment for the hazardous substance UST systems at the NICE Rockville Centre facility (from at least September 27, 2012 to February 10, 2015), and at the NICE Garden City facility (from at least September 27, 2012 to January 29, 2015), violates 40 C.F.R. Section 280.42(b).

104.     Nassau's failure to temporarily and then permanently close the Hazardous Substance UST Systems at the NICE Rockville Centre facility (from at least September 27, 2012

to February 10, 2015), and at the NICE Garden City facility (from at least September 27, 2012 to January 29, 2015), violates 40 C.F.R. Sections 280.70-280.74,

107.    Nassau violated 40 C.F.R. Section 280.70-280.74 by failing to temporarily and then permanently close the Hazardous Substance UST Systems at the NICE Rockville Centre and Garden City Bus Depot facilities for the period from at least September 27, 2012 until January 29, 2015 (for the NICE Garden City facility) and until February 10, 2015 (for the NICE Rockville Centre facility).

**SIXTH CLAIM**

**NASSAU FAILED TO PERMANENTLY CLOSE A WASTE OIL
TANK AT THE NICE ROCKVILLE CENTRE BUS DEPOT FACILITY
IN VIOLATION OF 40 C.F.R. SECTION 280.70(c) AND THE CA/FO**

106.    Plaintiff repeats and realleges paragraphs 1 through 105 above as if fully set herein.

107.    Pursuant to 40 C.F.R. Section 280.70(c), when an UST system is temporarily closed for more than 12 months, owners and operators must permanently close the UST system if it does not meet either performance standards in Section 280.20 for new UST systems or the upgrading requirements in Section 280.21, except that spill and overfill equipment requirements do not have to be met.

108.    The 1,000 gallon waste oil tank at the NICE Rockville Centre Bus Depot facility did not meet either performance standards in Section 280.20 for new UST systems or the upgrading requirements in Section 280.21.

109.    The 1,000 gallon waste oil tank at the NICE Rockville Centre Bus Depot Facility was temporarily closed for more than 12 months.

110.     Nassau's failure to temporarily or permanently close the 1,000 gallon waste oil tank at the NICE Rockville Centre Bus Depot from at least September 27, 2012 until April 30, 2017 violates 40 C.F.R. Section 280.70(c).

111.     Nassau failed to provide temporary closure followed by permanent closure of the waste oil tank at the NICE Rockville Centre Bus Depot by the December 31, 2013 deadline specified in paragraph 4(d) of the CA/FO.

112.     Nassau's failure to provide temporary closure followed by permanent closure of the waste oil tank at the NICE Rockville Centre Bus Depot, by the December 31, 2013 deadline specified in paragraph 4(d) of the CA/FO, violates the CA/FO.

## SEVENTH CLAIM

**NASSAU FAILED TO PROVIDE TIMELY WRITTEN COMPLIANCE CERTIFICATIONS FOR INJUNCTIVE WORK REQUIREMENTS IN THE CA/FO**

113.     Plaintiff repeats and realleges paragraphs 1 through 112 above as if fully set herein.

114.     Pursuant to paragraph 5 of the CA/FO, on or before March 1, 2014, Nassau was required to provide a written certification of its completion of all applicable work requirements, as specified in paragraph 4(a) through 4(d) of the CA/FO for underground storage tanks and piping at all of Nassau's facilities.

115.     Prior to April 18, 2016, Nassau had not provided to EPA a written certification as required by paragraph 5 of the CA/FO as to the completion of all the above-mentioned injunctive work requirements by the deadlines specified in paragraph 4(a) through 4(d) of the CA/FO.

116.     Nassau's written certification, dated April 18. 2016 was deficient because it did not certify the completion of all applicable work requirements, as specified in paragraphs 4(a) through 4(d) of the CA/FO.

## EIGHTH CLAIM

### NASSAU FAILED TO SUBMIT TIMELY AND
### COMPLETE PROGRESS REPORTS UNDER THE CA/FO

117.    Plaintiff repeats and realleges paragraphs 1 through 116 above as if fully set

herein.

118.    Pursuant to paragraph 20(a) of the CA/FO Nassau was required to submit

Progress Reports to EPA.

119.    Pursuant to paragraph 20(b) of the CA/FO the Progress Reports were required to

identify any issues or problems that arose in the implementation of each project, such as

implementation of CMS, and how any such issues or problems were addressed; under paragraphs

20(c) and 21, the Progress Reports were required to detail expenditures, and produce invoices

and documentation, made in connection with each project during the reporting period.

120.    Nassau did not submit at least four of the Progress Reports to EPA in a timely

manner.

121.    The first through fourth Progress Reports were due to be submitted to EPA,

respectively, on: January 1, 2013; April 1, 2013; July 1, 2013; and October 1, 2013.

122.    Nassau submitted the first through fourth Progress Reports late, respectively, as

follows: first Progress Report on November 12, 2013; second Progress Report on January 31,

2014; third Progress Report on April 15, 2014; and fourth Progress Report on March 31, 2015.

123.    None of these four Progress Reports (discussed in paragraphs 120 through 122

above) contained the information required under paragraphs 20(b) through 20(d), and paragraph

21, of the CA/FO.

124.    Nassau violated paragraphs 20 and 21 of the CA/FO by failing to provide timely

and complete Progress Reports.

<u>DEMAND FOR RELIEF</u>

WHEREFORE, the United States of America requests that, this Court:

(a)     Order Nassau to comply with the applicable requirements of 40 C.F.R. Part 280,

        including requirements pertaining to release detection for UST systems (tanks and

        piping) (40 C.F.R. Part 280, subpart D); secondary containment (40 C.F.R.

        § 280.42(a); temporary and permanent closure (40 C.F.R. §§ 280.70-74); and

        upgrade (including spill and overfill prevention) 40 C.F.R. (§§ 280.20-21);

(b)     Assess civil penalties against Nassau pursuant to Section 9006(a) of RCRA

        Subtitle I for violations of UST requirements at 40 C.F.R. Part 280;

(c)     Assess stipulated penalties in accordance with the CA/FO, or civil penalties under

        Section 9006(c) of the Act, against Nassau for each day of  noncompliance with

        the CA/FO;

(d)     Award the United States the costs of this action; and,

(e)     Grant such other and further relief as is proper.

Dated: Central Islip, New York
        September 30, 2020

                                JONATHAN D. BRIGHTBILL
                                Principal Deputy Assistant Attorney General
                                U.S. Department of Justice
                                Environment and Natural Resources Division

                                SETH D. DuCHARME
                                Acting United States Attorney
                                Eastern District of New York
                                Attorney for the United States of America
                                610 Federal Plaza
                                Central Islip, New York 11722

                                */s/ Diane C. Leonardo*
                                _____
                                DIANE C. LEONARDO
                                MATTHEW SILVERMAN
                                Assistant United States Attorneys
                                631-715-7854

OF COUNSEL:

BRUCE H. ABER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 2